FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

97 JUN 20  AM 10: 11

U.S. DISTRICT COURT
N.D. OF ALABAMA

**J.R. BLAND WILSON,**            ]
                                  ]
    Plaintiff(s),        ]
                                  ]
    vs.                  ]   CV-97-N-0641-S
                                  ]
**FIRST UNION NATIONAL BANK**     ]
**OF GEORGIA, et al.,**           ]
                                  ]
    Defendant(s).        ]

ENTERED

JUN 2 0 1997

## Memorandum of Opinion

## I.   Introduction

J. R. Bland Wilson filed this purported class action against First Union National Bank of Georgia, First Union National Bank, First Card Products (collectively "First Union"), and fictitious defendants, in the Circuit Court of Jefferson County, Alabama on January 16, 1997. The complaint alleged one count for fraud under Alabama law in connection with a credit card promotion Mr. Wilson received in the mail.  The defendants removed the case to this court on March 14, 1997.  The court presently has for consideration the Motion to Remand filed by the Plaintiff on April 18, 1997.  For the reasons stated herein, the motion will be granted.

## II.   Facts[1]

On or about July 9, 1996, First Union sent the plaintiff a letter informing him that he was "pre-approved" for "a new First Union Visa Gold card . . . with a credit line of up to

---

[1] The "facts" are discerned from the parties' submissions. They are generally not in dispute. The parties argue, not about the facts but about the impact of the facts on the issues surrounding remand.

17

$6,000.00 and no annual fee." *Complaint Exhibit A*, at 1 (emphasis in original). The letter further stated that if he signed up for the card he could "[e]njoy a fixed 5.9% APR on purchases until next year."[2] *Id.* Mr. Wilson applied for and received his new First Union Visa Gold. On September 27, 1996, he used his new card to obtain a $5,500.00 cash advance from First Commercial Bank of Birmingham, Alabama. However, instead of being assessed at an APR of 5.9%, cash advances were assessed an interest rate of 19.80%. Mr. Wilson thereafter was charged a $90.75 finance charge on this cash advance and a $29.50 cash advance fee. He claims the defendants defrauded him by suppressing "[t]he material fact that obtaining cash at a bank was not at 5.9% but instead was at 19.8% (plus the cash advance fee)." *Complaint*, at 3. On behalf of himself and the class members he seeks to represent, he seeks compensatory damages in the amount of $45,000.00.

## III. Discussion

In their notice of removal, the defendants allege three grounds under which this court has jurisdiction. First they contend that this court has diversity jurisdiction under 28 U.S.C. § 1332. Second, they contend that the plaintiff's claims are preempted by the Federal Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.* Lastly, the defendant's argue that this court has jurisdiction because the National Bank Act, 12 U.S.C. § 1, *et seq.* completely preempts the plaintiffs state law claims. The court will examine each of these contentions in turn.

---

[2] This language included an asterisk. The language next to the corresponding asterisk at the bottom of the page stated "Please see reverse side for full details." However, the reverse side of that page has not been provided for this court's review.

2

## A.   Diversity Jurisdiction

Title 28, U.S.C. § 1332 reads:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties;   and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

28 U.S.C. § 1332.  The parties do not dispute that complete diversity of citizenship exists,

but instead disagree over whether the requisite amount in controversy is satisfied.

The plaintiff, in his complaint states: "WHEREFORE, PREMISES CONSIDERED, the

plaintiff, J.R. Bland Wilson respectfully requests this Court enter judgment on behalf of the

plaintiff, J.R. Bland Wilson for compensatory damages in an amount of $45,000.00."[3]

---

[3]  Mr. Wilson carefully, deliberately, and intentionally crafted his complaint to avoid any possibility of federal jurisdiction.  This fact is made abundantly clear by reference to paragraph 24 of his complaint which states:

The plaintiff J.R. Bland Wilson specifically waives any claims that might be brought under any federal statute or federal common law, both for his individual claims as well as the claims of the class members he seeks to represent.  The total amount of damages sought by both the plaintiff J.R. Bland Wilson and each class member he seeks to represent does not exceed $45,000.00 each and no statutory attorney fees are sought.  No injunctive relief is sought.  This is the maximum amount sought regardless of the number of counts or allegations in this complaint or any amendment thereto.

*Complaint*, at 4.

3

However the defendants argue that the plaintiff's claims actually include punitive damages because "the amount of damages claimed per plaintiff grossly exceeds any possible compensatory recovery." *Notice of Removal*, at 4. The defendants contend that the measure of the plaintiff's damages could only be the difference between the 19.80% interest rate the plaintiff was actually charged, and the 5.9% interest rate the plaintiff contends he should have been charged. *Brief in Opposition to Remand*, at 7. They specifically also contend that Alabama law does not allow compensatory damages for emotional pain and suffering because the plaintiff's purported loss is an economic injury. Therefore, since each individual class member's compensatory damages cannot reach $45,000, the argument goes, the remaining sum *must* be punitive damages. In some circumstances involving class actions, the amount of punitive damages claimed may be aggregated when determining the amount in controversy. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996). Therefore, the defendant's contend these excess sums should be aggregated to establish the requisite amount in controversy.

The court does not find the defendant's argument persuasive. First, the Alabama Supreme Court has upheld compensatory damage awards for mental anguish in fraud cases. *See Duck Head Apparel Co. v. Hoots*, 659 So. 2d 897 (Ala. 1995) (compensatory damages for mental anguish upheld for sales representatives defrauded of their commissions). *Reinhardt Motors, Inc. v. Boston*, 516 So. 2d 509 (Ala. 1986), cited by the defendants, stands for the proposition that the law does not allow recovery of damages for mental suffering where the tort results in mere injury to property. In this case the injury, if any, was done to Mr. Wilson, not to his property. In addition, "where the wrong is willful

4

rather than negligent, recovery may be had for the ordinary, natural, and proximate consequences though they consist of shame, humiliation and mental anguish." *Holcombe v. Whitaker*, 318 So. 2d 289, 293 (Ala. 1975). Since the plaintiff has alleged that the defendants' "misrepresentations were done intentionally, recklessly, and/or innocently," this case is the type where damages for mental anguish may be had.

Secondly, if the plaintiff seeks compensatory damages alone, which he has done, he will be limited to the amount he may receive under Alabama law. He may receive no more. Therefore, to whatever extent $45,000.00 "grossly exceeds" the amount of compensatory damages the plaintiff may receive, there will be no other damages to be labeled punitive or otherwise. Accordingly, the plaintiff does not make a claim for punitive damages.

## B.   Truth in Lending Preemption

The defendant next argues that

Alternatively, this Court has federal question jurisdiction over plaintiff's claims against defendants, because plaintiff's claims are in reality pleaded claims under the Federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq*. . . . The provisions of the Federal Truth in Lending Act completely preempt any state statutory or common law claims asserted by plaintiff:

(d) Special rule for credit and charge cards.
State law requirements relating to the disclosure of credit information in any credit or charge card application or solicitation that is subject to the requirements of section 127(c) of chapter 2 of the act (s 226.5a of the regulation) or in any renewal notice for a credit or charge card that is subject to the requirements of section 127(d) of chapter 2 of the act (s 226.9(e) of the regulation) are preempted. State laws relating to the enforcement of section 127(c) and (d) of the act are not preempted.

12 C.F.R. § 226.28(d). Accordingly, plaintiff's claims of misrepresentation and/or suppression of a material fact contained in the credit card solicitation

5

are completely preempted by the Federal Truth in Lending Act which supplies the plaintiff's sole remedy.

*Notice of Removal*, at 6.

The Supreme Court has concluded that "[o]n occasion . . . the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well pleaded complaint rule.'" *Caterpillar v. Williams*, 482 U.S. 386, 393 (1987) (*quoting Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). The "complete preemption" doctrine is rarely applied and does not apply to the Truth in Lending Act. *McCrae v. Commercial Credit Corp.*, 892 F. Supp. 1385, 1386 (M.D. Ala. 1995). Faced with similar facts to the instant case Judge De Ment, in the Middle District of Alabama, wrote

This "complete pre-emption" doctrine . . . does not apply to the TILA. The TILA does not contain a civil enforcement provision that requires complete preemption of law, nor is there any other manifestation that Congress intended preemption. See General Elec. Capital Auto Lease, Inc. v. Mires, 788 F. Supp. 948, 950 (E.D.Mich 1992) (finding that "[a]bsent in the [TILA] statute are any provisions which purport to demonstrate the preemption of state causes of action").

*McCrae*, 892 F. Supp. at 1386-87. The defendants have not cited, and the court has not found, any cases where it has been held that the TILA completely preempts state law. Accordingly, Alabama fraud law is not completely preempted by the TILA.

Although the defendants argue complete preemption, what they actually have is a preemption defense. As the Supreme Court has explained

Ordinarily, federal preemption is raised as a defense to the allegations in a plaintiff's complaint. Before 1887, a federal defense such as preemption could provide a basis for removal, but, in that year, Congress amended the removal statute. We interpret that amendment to authorize removal only

6

> where original federal jurisdiction exists. Thus, it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar*, 482 U.S. at 392-93. Therefore, the court has no jurisdiction over the plaintiff's claim based on preemption.

## C.   **National Bank Act Preemption**

The defendants lastly argue that "[t]his Court also has federal question jurisdiction over the claims against defendants, because plaintiff's claims are completely preempted by the National Bank Act, 12 U.S.C. § 1, *et seq.* Specifically, the defendants cite the court to Sections 85 and 86 of the Act. Section 85 provides that "[a]ny association may . . . charge on any loan . . . interest at the rate allowed by the laws of the state . . . where the bank is located." 12 U.S.C. § 85. Section 86 states that the "charging of a rate of interest greater than is allowed by Section 85 . . . shall be deemed a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it . . . ." 12 U.S.C. § 86. They claim that these sections change the plaintiff's state law fraud claim into a federal claim under the National Bank Act.

Some courts have accepted the  rule that the National Bank Act can in some circumstances completely preempt a state law claim made for excessive interest charges. *E.g., M. Naha & Co. v. First Nat'l Bank*, 930 F.2d 608, 612 (8th Cir. 1991); *Moss v. Southtrust Mobile Services, Inc.*, CV-96-P-1647-W (Pointer, J.); *Fortenberry v. Southtrust Bank of Alabama National Association*, CV-95-B-1691-J (Blackburn, J.); *Watson v. First Union Nat'l Bank of South Carolina*, 837 F. Supp. 146, 150 (D. S.C. 1993); *Nelson v. Citibank (South*

*Dakota) N.A.*, 794 F. Supp. 312, 316 (D. Minn. 1992). However, this case does not involve such a claim. Here, the plaintiff does not contend the rate of interest he was charged was illegal or excessive. Instead, the plaintiff contends the true interest rate on cash advances was misrepresented and suppressed. In support of removal and in opposition to remand, the defendants attach opinions from Judge Sam C. Pointer and Judge Sharon L. Blackburn. In both of these cases, however, the plaintiff made claims that interest charges were "excessive." *See Moss v. Southtrust Mobile Services, Inc.*, CV-96-P-1647-W (Pointer, J.) ("Plaintiff . . . alleged that the insurance purchased for the mobile home and charged against the plaintiff's account was not related to the value of the collateral *and that the charges for interest on the loan and the insurance were excessive and unconscionable*.") (emphasis added); *Fortenberry v. Southtrust Bank of Alabama National Association*, CV-95-B-1691-J (Blackburn, J.) (claims involved an assertion that SouthTrust imposed unauthorized insurance premiums (found to be "interest" under the statute) in connection with a car loan). Because the plaintiff does not claim he was charged an excessive rate but rather claims that the defendants concealed the true interest rate from him, the National Bank Act has no preemptive effect in this case.

## IV.  Conclusion

There being no federal question and the amount in controversy not being satisfied, the court does not have jurisdiction over this matter. Accordingly, it will be **REMANDED** to the Circuit Court of Jefferson County, Alabama.

8

Done, this ___20th___ of June, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE